LOURIE, Circuit Judge,
concurring in part and dissenting in part.
I join the majority in reversing the district court’s decision regarding the '831 patent. The specification for that patent does not consistently show an opening in the spring metal adaptor and need not have been so limited. The district court also did not make a specific claim construction for the '831 patent, but simply adopted its analysis from the '050 patent specification. Thus, the district court erred in failing to separately construe the '831 claims. However, I respectfully dissent from the majority’s holding regarding the '050 patent.
One of the most difficult tasks in adjudicating patent cases is interpreting patent claims. We have propounded a variety of “rules” for doing so, such as that claims should not be limited to preferred embodiments, Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed.Cir.2004) (quotation omitted), claim terms are interpreted in light of the specification of which they are a part, Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 452 (Fed.Cir. 1985), and claims are interpreted according to their plain meaning, Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir.2005) (en banc).
But the basic mandate is for claims to be interpreted in light of the specification of which they are a part because the specification describes what the inventors invented. Vitronics Corp. v. Conceptronic, 90 F.3d 1576, 1582 (Fed.Cir.1996). The specification is the heart of the patent. In colloquial terms, “you should get what you disclose.”
The fine distinctions we often make concerning what is disclosed in a specification arise of course from how the inventors describe aspects of their invention. They describe embodiments of the invention, preferred embodiments, specific examples, sometimes using language broader than expressed in the claims to describe embodiments, and finally, in frequent boilerplate, indicate that the invention isn’t to be limited to what is expressly disclosed (as if they were unable to describe anything else they actually invented). Questions then arise as to whether an invention is limited to a preferred embodiment, or to the disclosed embodiments, or to what the specification in some language indicates is part of the invention.
But, at bottom, we are reading a patent specification to see what the inventors invented, what they disclosed, and how they conveyed that information. A patent is a teaching document. In almost all cases, the inventors, and their patent solicitors, knew what was invented and generally disclosed their invention in competent language.
Unfortunately, the nature of our adversary system often causes those patents to be asserted against someone engaged in activity not contemplated by the inventors *1258 as part of their invention. So the patent is used as a business weapon against such parties, and litigation counsel attempt to fit a square peg into a round hole, or, in other words, to fit into the claim language what the inventors never contemplated as part of their invention.
I believe the inventors in this case contemplated that their invention consisted only of spring metal adaptors with an opening that results from not forming a complete circle. They said just that, in column 3, lines 20-22. (“The circular metal spring adaptor 20 has an opening that results from not forming a complete circle.”) Claim 1 states that as well in its fifth paragraph. '050 patent, col.9 ll.26-32 (“said circular spring metal adaptor being less than a complete circle ...”). The afore-mentioned disclosure does indeed state that the “preferred embodiment” has that feature, but the other three embodiments similarly have spring metal adaptors with an opening that results in them forming less than a complete circle.
Figures 2, 5, 9, 12, and 16 show an opening that precludes the adapters from being a complete circle. No drawing or disclosure appears in the specification in which the adaptors consist of a complete circle. Reading the specification therefore convinces me that that is the limitation the inventors had in mind when they and their patent drafters wrote their patent, including the claims. It is true that independent claim 8, unlike claim 1, lacks the “being less than a complete circle” language of claim 1, but claim differentiation should not enlarge claims beyond what the specification tells us the inventors contemplated as their invention.
The problem in claim interpretation is thus our focus on our muddy, conflicting, and overly formulaic rules, see, e.g., KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 421, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) (warning against the use of rigid rules), and Bilski v. Kappos, — U.S.-, 130 S.Ct. 3218, 3226, 177 L.Ed.2d 792 (2010), when the real task of claim interpretation is to read the specification and determine what the inventors meant when they used the language they did. Obviously the claims define the scope of protection accorded the owners of a patent. Phillips, 415 F.3d at 1312. But in construing the claims we should avail ourselves of the knowledge we glean from the patent specification to see what the inventors disclosed as their invention. The bottom line of claim construction should be that the claims should not mean more than what the specification indicates, in one way or another, the inventors invented.
In this case, the inventors made clear in the specification of the '050 patent that the spring metal adapters in their invention have an opening that prevents the adaptors from forming a complete circle. The result that the panel majority arrives at here, on remand, could be that Bridgeport might be held to be an infringer of a patent that clearly indicates that there is a split in the adaptor, by making or selling an adaptor lacking such a split. That is not a result that the patent law ought to protect.
For the foregoing reasons, I join in part but respectfully dissent concerning the panel’s reading of the '050 patent.